IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

OLIVER H. KUPAU,

        Petitioner,

    vs.

UNITED STATES DEPARTMENT OF
LABOR,

        Respondent.

_____

LABORERS INTERNATIONAL UNION
OF NORTH AMERICA, and
LABORERS' UNION LOCAL 368,

        Intervenors.

_____

Civ. No. 08-00296 HG LEK

**ORDER DENYING PETITIONER'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AS TO APPLICABILITY OF 29 U.S.C. § 504**

Petitioner Oliver H. Kupau, pursuant to 29 U.S.C. § 504(a), has applied for exemption from disqualification from employment by a labor union.  Kupau's current disqualification from employment is based on his prior conviction for Laundering of Monetary Instruments.

Kupau moves for partial summary judgment declaring, as a matter of law, his conviction for money laundering presents no bar to his employment by Local 368 as the business manager.

For the reasons set forth below, Petitioner's Motion is DENIED.

**PROCEDURAL HISTORY**

1

On June 23, 2008, Petitioner Oliver H. Kupau filed an Application For Exemption From Disqualification pursuant to 29 U.S.C. § 504(a).  (Doc. 1.)

On July 15, 2008, United States District Judge David Alan Ezra issued an Order Granting Laborers' Union Local 368 and Laborers International Union Of North America's ("LIUNA") Motion For Leave To Intervene.  (Doc. 26.)

On July 25, 2008, United States District Judge David Alan Ezra issued an Order Denying Petitioner's Motion To Set Hearing Without Prejudice; Denying Petitioner's Ex Parte Motion TO Shorten Time For Hearing As Moot; And Construing Application As A Complaint And Setting Deadline For Responsive Pleading.  (Doc. 37.)

On September 16, 2008, Petitioner Kupau filed the Motion For Partial Summary Judgment As To Applicability Of 29 U.S.C. § 504, and a separate Concise Statement Of Facts.  (Docs. 51 and 52.)

On September 19, 2008, Respondent United States Department Of Labor filed an Answer.  (Doc. 54.)

On October 9, 2008 Respondent the United States Department of Labor filed the Government's Opposition To Petitioner's Motion For Partial Summary Judgment As To Applicability Of 29 U.S.C. § 504, and a separate Response To Petitioner's Concise Statement Of Facts.  (Docs. 56 and 55.)

On October 20, 2008, Petitioner Kupau filed a Reply.  (Doc.

58.)

On October 27, 2008, Petitioner Kupau's Motion For Partial Summary Judgment As To Applicability Of 29 U.S.C. § 504, came on for hearing and the Court took the Motion under advisement.

On October 30, 2008, the Court issued a Minute Order DENYING Petitioner Kupau's Motion For Partial Summary Judgment As To Applicability Of 29 U.S.C. § 504.  (Doc. 60.)  The Order herein sets forth the basis for the October 30, 2008 ruling.

## FACTS

The material facts in the matter are not in dispute.  Since the mid 1980s, Oliver H. Kupau ("Kupau") organized, ran, and profited from illegal cockfight gambling derbies.  In 1995, Undercover Honolulu Police Department officers observed Kupau running chicken fight derbies on four separate occasions.  Kupau was seen passing out fight cards, announcing odds, displaying trophies, collecting entrance fees, calling entry numbers and instructing participants in the set up of the fight pits. (Government's Opposition To Petitioner's Motion For Partial Summary Judgment ("Gov. Opp."), Exh. 4 at 17-18, Sentencing Hearing transcript in Cr. No. 02-00223, dated 11/15/2002, Doc. 56-5.)  Kupau was convicted on November 20, 1998 of Promoting Gambling in the First Degree in the Circuit Court of the First Circuit, State of Hawaii, State of Hawaii vs. Oliver Kupau III, et al., Cr. No. 1PC98-0-000519, fined $2000 and placed on five

3

years probation.

On March 31, 1998, Kupau bribed a Honolulu Police Department officer to provide police protection for his illegal cockfight business so that the gambling could continue without any fear of arrest.  Kupau personally paid the police officer $5100 in funds taken from his illegal cockfight gambling profits in the belief that the police officer was corrupt and would shield Kupau from prosecution in return.  (Kupau's Separate Concise Statement of Facts ("Petitioner's SCSF") at 2, Doc. 52; Gov. Opp., Exh. 2 at 5, Memo. of Plea Agreement in Cr. No. 02-00223, dated 5/31/2002, Doc. 56-3.)

Based on his bribery of the police officer, Kupau was convicted on November 15, 2002, for Laundering of Monetary Instruments in violation of 18 U.S.C. § 1956(a)(1)(A)(i) in Criminal No. 02-00223.  (Application For Exemption From Disqualification ("App. For Exemption") at Exh. A, Judgment in USA v. Oliver Kupau, Cr. No. 02-00223, Doc. 1.)  Kupau was sentenced to four months of imprisonment, four months of home detention, and three years of supervised release.  In sentencing Kupau to a term in prison, the Court noted that Kupau's crime was "about the corruption of law enforcement officers and the effect that has in our community."  (Gov. Opp., Exh. 4 at 18-19, Sentencing Hearing transcript in Cr. No. 02-00223, dated 11/15/2002, Doc. 56-5.)  Kupau was also sentenced to pay $3100 in

fines and assessments, and to forfeit $5100.  Kupau was released
from prison on May 2, 2003, and after serving 29 months of his
three year term of supervised release, was discharged early in
November, 2005.  (App. For Exemption at 3, ¶ 6, Doc. 1.)

Kupau was employed by Laborers Local 368 ("Local 368")
during the time he ran the chicken fights, serving as a business
agent, a member of the executive board, and a trustee for two
union pension plans from January 2, 1989 through June 17, 2008.
(Gov. Opp., Exh. 3 at 4, Arraignment and Plea Hearing transcript
in Cr. No. 02-00223, dated 5/31/2002, Doc. 56-4; App. For
Exemption at 2, ¶ 1, Doc. 1.)  In January 2007, the national
union, LIUNA, imposed a trusteeship on Local 368 for malfeasance,
including financial mismanagement.  As part of the process of
concluding the trusteeship, LIUNA held an election for the
position of business manager, the union's highest office.  Kupau
was nominated for the position on March 22, 2008, and took part
in the May, 2008 election.  (App. For Exemption, Exh. F at 1-3,
Order of LIUNA Special Elections Officer Joseph Guerrieri, Jr.,
dated 5/14/2008, Doc. 1.)

Title 29 U.S.C. § 504 disqualifies a person convicted of
certain serious crimes, including bribery, from employment by a
labor union.  On March 26, 2008, another candidate for business
manager, William Naone, Jr., sent a written election protest to
LIUNA's special elections officer.  Candidate Naone contended

that Kupau was disqualified as a candidate because of his prior criminal convictions.  On June 9, 2008, the U.S. Department of Labor, Employment Standards Administration, issued a determination through its District Director, R. Bruce Edgington, that Kupau was barred from holding any union office or employment pursuant to § 504(a) by virtue of his conviction for money laundering.  (App. For Exemption, Exh. I, Letter dated 6/9/2008, Doc. 1.)  The Department of Labor issued the determination after consultation with the U.S. Department of Justice.  (App. For Exemption at 7, Doc. 1.)

LIUNA, the national union, terminated Kupau's employment as business agent with Local 368 on June 17, 2008 after receiving a letter from the Department of Labor advising the union that Kupau's continued employment would be considered a violation of the Labor-Management Reporting and Disclosure Act.  (App. For Exemption, Exh. J, 6/16/2008 Letter from R. Bruce Edgington to Michael Bearse, Doc. 1.)

**The Motion For Partial Summary Judgment**

In his Motion for Partial Summary Judgment, Kupau asserts that he is entitled to judgment as a matter of law because money laundering is not one of the enumerated disqualifying offenses pursuant to 29 U.S.C. § 504.  Kupau contends that because he was convicted of money laundering, and was not convicted of the Hawaii state law offense of bribery pursuant to HRS § 710-

6

1040(1)(a), he is not precluded by § 504 from holding union office.

Kupau also argues that application of § 504 to his circumstances violates his right to due process pursuant to the Fifth Amendment of the United States Constitution, and renders § 504 void for vagueness.

Local 368 and LIUNA have intervened in the action, supporting Kupau in a bid to retain Kupau as the leader of Local 368.  (Memo. In Support Of Motion To Intervene at 1-2, Doc. 9-2.)

## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  There must be sufficient evidence that a reasonable jury could return a verdict for the nonmoving party.  Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir. 1996).

The moving party has the initial burden of "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party, however, has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial.  The moving party need not

produce any evidence at all on matters for which it does not have the burden of proof.  <u>Celotex</u>, 477 U.S. at 325.  The moving party must show, however, that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law.  That burden is met simply by pointing out to the district court that there is an absence of evidence to support the non-movant's case.  <u>Id.</u>

If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of probative evidence tending to support its legal theory. <u>Commodity Futures Trading Comm'n v. Savage</u>, 611 F.2d 270, 282 (9th Cir. 1979).  The opposing party must present admissible evidence showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); <u>Brinson v. Linda Rose Joint Venture</u>, 53 F.3d 1044, 1049 (9th Cir. 1995).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Nidds</u>, 113 F.3d at 916 (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986)).

The court views the facts in the light most favorable to the non-moving party.  <u>State Farm Fire & Casualty Co. v. Martin</u>, 872 F.2d 319, 320 (9th Cir. 1989).

Opposition evidence may consist of declarations, admissions, evidence obtained through discovery, and matters judicially noticed.  Fed. R. Civ. P. 56(c); <u>Celotex</u>, 477 U.S. at 324.  The

opposing party cannot, however, stand on its pleadings or simply assert that it will be able to discredit the movant's evidence at trial.  Fed. R. Civ. P. 56(e); <u>T.W. Elec. Serv.</u>, 809 F.2d at 630. The opposing party cannot rest on mere allegations or denials. Fed. R. Civ. P. 56(e); <u>Gasaway v. Northwestern Mut. Life Ins. Co.</u>, 26 F.3d 957, 959-60 (9th Cir. 1994).  Nor can the opposing party rest on conclusory statements.  <u>National Steel Corp. v. Golden Eagle Ins. Co.</u>, 121 F.3d 496, 502 (9th Cir. 1997).

## ANALYSIS

I.  **THE LABOR MANAGEMENT REPORTING AND DISCLOSURE ACT**

Title 29 U.S.C. § 504 prohibits any individual convicted of specified crimes, including bribery, from serving as an officer, director, executive board member, or employee of a labor organization for a period of thirteen years from the later of the date of conviction or the end of a period of incarceration, which ever is longer.[1]  29 U.S.C. § 504(a).  The employment

---

[1] 29 U.S.C. § 504(a) states (emphasis added):

(a) Membership in Communist Party; persons convicted of robbery, bribery, etc.

**No person** who is or has been a member of the Communist Party or **who has been convicted of, or served any part of a prison term resulting from his conviction of**, robbery, **bribery**, extortion, embezzlement, grand larceny, burglary, arson, violation of narcotics laws, murder, rape, assault with intent to kill, assault which inflicts grievous bodily injury, or a violation of subchapter III or IV of this chapter any felony involving abuse or misuse of such person's position or employment in a labor organization or employee benefit

disability is invoked by conviction of an enumerated crime, or by

the conviction of an offense for which a listed crime is an

-------

> plan to seek or obtain an illegal gain at the expense of the members of the labor organization or the beneficiaries of the employee benefit plan, or conspiracy to commit any such crimes or attempt to commit any such crimes, *or a crime in which any of the foregoing crimes is an element, shall serve or be permitted to serve--*
>
> . . .
>
> (2) *as* an officer, director, trustee, member of any executive board or similar governing body, *business agent, manager,* organizer, *employee, or representative in any capacity of any labor organization,*
>
> . . . *or*
>
> (5) *in any capacity, other than in his capacity as a member of such labor organization, that involves decisionmaking authority concerning, or decisionmaking authority over, or custody of, or control of the moneys, funds, assets, or property of any labor organization,*
>
> *during or for the period of thirteen years after such conviction or after the end of such imprisonment, whichever is later,* unless the sentencing court on the motion of the person convicted sets a lesser period of at least three years after such conviction or after the end of such imprisonment, whichever is later, or unless prior to the end of such period, in the case of a person so convicted or imprisoned, (A) his citizenship rights, having been revoked as a result of such conviction, have been fully restored, or (B) if the offense is a Federal offense, the sentencing judge or, if the offense is a State or local offense, the United States district court for the district in which the offense was committed, pursuant to sentencing guidelines and policy statements under section 994(a) of Title 28, determines that such person's service in any capacity referred to in clauses (1) through (5) would not be contrary to the purposes of this chapter.

10

element.  Id.

Historically, 29 U.S.C. § 504 was enacted as part of the Labor Management Reporting and Disclosure Act of 1959, 29 U S.C. § 401 *et seq.* ("LMRDA").  Congress enacted the LMRDA as remedial legislation intended to combat union corruption and protect the rights of union members.  See, e.g., Thomas v. Grand Lodge of International Association of Machinists & Aero. Workers, 201 F.3d 517, 518 (4th Cir. 2000).  The statute was a reaction to "a number of instances of breach of trust, corruption, disregard of the rights of individual employees, and other failures to observe high standards of responsibility and ethical conduct."

Passage of the LMRDA was deemed necessary to protect "the rights and interests of employees and the public generally as they relate to the activities of labor organizations, employers, labor relations consultants, and their officers and representatives."  29 U.S.C. § 401(b).  The provisions of the statute were enacted by Congress to "eliminate or prevent improper practices on the part of labor organizations, employers, labor relations consultants, and their officers and representatives.  Id. at § 401(c).  In passing the LMRDA, Congress determined that persons who commit serious crimes should not be permitted to hold union office until a significant period of time had elapsed after their punishment.  Harmon v. Teamsters, 832 F.2d 976, 979 (7th Cir. 1987).

11

## II.  <u>DISQUALIFICATION PURSUANT TO § 504</u>

Kupau took $5100 in profits from his illegal chicken fight derbies and bribed a police officer to provide police protection for the gambling business.  There is no factual dispute that the conduct that resulted in Kupau's conviction was an act of bribery.  The legal dispute in the case arises because the statute pursuant to which Kupau was convicted was money laundering,[2] rather than that of bribery.  Kupau contends that he is not subject to § 504 disqualification because he was never convicted of the state law offense of bribery, and because the language of the money laundering statute of conviction does not refer directly to the state law offense of bribery.[3]

---

[2]The statute of conviction in Kupau's criminal case, 18 U.S.C. § 1956(a)(1)(A)(i), provides for the sentencing of:

> (a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity--
>
> (A)(i) with the intent to promote the carrying on of specified unlawful activity;
>
> . . .
>
> shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both.

18 U.S.C. § 1956(a)(1)(A)(i).

[3]Hawaii Revised Statutes § 710-1040 provides:

12

A.    __The Meaning Of Bribery Within § 504__

The state law offense of bribery does not need to be specifically listed in the statute of conviction for the offense to be deemed the equivalent of bribery within the meaning of § 504.  A district court must determine the meaning of a particular § 504(a) crime and whether the crime invokes employment disqualification by reference to federal law, not state law.  "It is beyond dispute that whether one has been 'convicted' within the meaning of a federal statute is a question of federal, not state, law."  Beardsley v. United States Department of Labor, 807 F.Supp. 1192, 1193 (W.D.Pa. 1992) (citing Dickerson v. New Banner Institute, Inc., 460 U.S. 103, 111 (1983)).

Federal district courts reference federal law when finding that certain acts constitute § 504 bribery.  The District Court for the Southern District of New York, in the case of Hodgson,

Bribery

(1) A person commits the offense of bribery if:

(a) The person confers, or offers or agrees to confer, directly or indirectly, any pecuniary benefit upon a public servant with the intent to influence the public servant's vote, opinion, judgment, exercise of discretion, or other action in the public servant's official capacity; or
(b) While a public servant, the person solicits, accepts, or agrees to accept, directly or indirectly, any pecuniary benefit with the intent that the person's vote, opinion, judgment, exercise of discretion, or other action as a public servant will thereby be influenced.

13

held that a conviction pursuant to 29 U.S.C. § 186 for violation of restrictions on financial transactions was the equivalent of § 504 bribery. <u>Hodgson v. Chain Service Restaurant, Luncheonette and Soda Fountain Emp. Union, Local 11</u>, 355 F.Supp. 180, 185-86 (S.D. N.Y. 1973). In <u>Hodgson</u> the labor union official convicted of the crime received prohibited payments from an employer. <u>Id.</u> Similarly, in the case of <u>Gillette v. United States</u>, the District Court for the Southern District of Florida held that conspiracy to receive employer payments in violation of 29 U.S.C. § 186(a) was equivalent to conspiracy to commit § 504 bribery. <u>Gillette v. United States</u>, 444 F.Supp. 793, 795 (S.D. Fla. 1976).

Conviction of an offense under a state statute for bribery is not necessary to invoke the employment disqualification provision of § 504.

### B.   <u>§ 504(a) Is Liberally Construed</u>

The central question is whether Kupau's conviction for money laundering under 18 U.S.C. § 1956(a)(1)(A)(i) based on an act of bribery constitutes a conviction for bribery within the meaning of § 504. The United States Supreme Court, in <u>Warner v. Goltra</u>, mandated that a statute be construed "in the light of the mischief to be corrected and the end attained." 293 U.S. 155, 158 (1934). In keeping with the mandate, federal courts have rejected a narrow interpretation of § 504. The courts have held § 504(a) to be a remedial statute which should be liberally

14

construed, in order to avoid a narrow reading of the statute which would seriously impair the efficacy of the Act.  See United States v. Hughes, 964 F.2d 536, 539-41 (6th Cir. 1992) (holding that § 504 is a remedial statute regulating current conduct).

In 1987, prior to his appointment to the United States Supreme Court, Judge Breyer of the First Circuit Court of Appeals addressed the question of whether § 504 is to be narrowly construed in the case of United Union Of Roofers, Waterproofers And Allied Workers, Union No. 33 v. Meese.  In Roofers, the First Circuit Court of Appeals held that a union officer's conviction under a federal labor intimidation statute, 29 U.S.C. § 530, fell within the type of behavior prohibited by § 504.  United Union Of Roofers, Waterproofers And Allied Workers, Union No. 33 v. Meese, 823 F.2d 652, 655 (1st Cir 1987).  The Roofers court found that the intimidation statute of conviction's focus on "deprivation of rights by violence," rather than on the § 504 listed crime of "assault which inflicted grievous bodily injury," did not prevent the union member from being disqualified from employment.  Then Circuit Judge Breyer explained in his opinion that the intimidation statute's phrase "use of force or violence," was held to substantially cover the listed § 504 crime of aggravated assault.  Id. at 656.

The Roofers court considered the intent of § 504 to create "strong barriers against the control of unions by unreformed

convicted thieves, racketeers, and thugs" in reaching the decision. Id., quoting 105 Cong. Rec. at 7021 (statement of Sen. Kennedy). The First Circuit Court of Appeals explained that "Congress could not have meant to include on its 'disqualification' list only convictions under statutes that use the list's exact words." Id. at 655.

The First Circuit Court of Appeals opinion is in keeping with earlier district court decisions. The district court in Lippi v. Thomas, 298 F.Supp. 242, 246-48 (M.D.Pa. 1969) liberally construed § 504 in holding that a conviction for "aiding and abetting in the willful misapplication of bank funds pursuant to 18 U.S.C. § 656" constituted embezzlement within the meaning of § 504. In the case of Illario v. Frawley, the United States District Court for the District of New Jersey noted the obvious impossibility of drafting federal legislation which makes specific references to state-proscribed criminal activity. Illario v. Frawley, 426 F.Supp. 1132, 1137 (D.N.J. 1977). The court reasoned that the impossibility compels the conclusion that the ambit of § 504 is not restricted "to the four corners of the list of generic crimes specified by Congress."

Circuit Judge Breyer, in his opinion in Roofers, reasoned that to interpret the list of disqualifying acts as other than a list of generic descriptions would undercut the basic purpose of § 504. The court underscored the point by comparing state and

16

federal statutes proscribing bribery.[4]  The court noted that statutes frequently use different language to forbid the same type of conduct, and concluded from this that conviction under a statute that *substantially* covers the conduct listed in § 504 warrants disqualification.  Id. at 655-56.

Employment disqualification is invoked by an individual's conviction of a crime which is the functional equivalent of one of the enumerated offenses in § 504.  Roofers, 823 F.2d at 655-60.  In interpreting the language of the statute, federal courts determine whether the specific offense involved comes within the generally accepted definition of the related § 504(a) crime.  As Circuit Judge Breyer explained in Roofers, the list of common law crimes "includes convictions under statutes that *substantially* cover the conduct listed in the disqualification statute, regardless of the precise statutory language." Id. (emphasis in original).

Here, Kupau's conviction under the money laundering statute substantially covers bribery, a conduct listed in § 504. Conviction of the offense of money laundering pursuant to 18 U.S.C. § 1956(a)(1)(A)(i) requires proof of the following

_____

[4]The First Circuit Court of Appeals in Roofers compared the following bribery provisions: 18 U.S.C. § 201 (1982) (influencing public official or witness); 18 U.S.C. § 212 (1982) (gift to bank examiner); 29 U.S.C. § 186(a) (1982) (illegal transaction with labor representative); Mass.Gen.Laws ch. 268, § 13B (1984) (influencing witness); N.Y.Penal Law § 215.00 (McKinney 1975) (similar).

elements:

> [T]hat the defendant: (1) conducted a financial
> transaction involving the proceeds of unlawful
> activity;
>
> (2) knew the proceeds were from unlawful activity; and
>
> (3) intended to promote unlawful activity.

United States v. Gough, 152 F.3d 1172, 1173 (9th Cir. 1998).  A

financial transaction includes a delivery of money for an

unlawful purpose.  Id.

In the case of Panaro, the Ninth Circuit Court of Appeals

held that the third element of promoting unlawful activity is

satisfied when the financial transaction in which the defendant

engaged was necessary in order for the defendant to realize the

benefit of the underlying illegal activity.  United States v.

Panaro, 266 F.3d 939, 949 (9th Cir. 2001).  In Kupau's criminal

case, the third element of the crime of money laundering was

established by Kupau's admission to paying $5100 in illegal

gambling profits to a police officer in order to gain police

protection for the illegal chicken fight derbies.  (See

Petitioner's SCSF at 2, Doc. 52.)  In the plea colloquy of May

31, 2002, in Kupau's criminal case, Kupau admitted to the

payment:

> THE COURT: Now, Mr. Kupau, please tell me in you own
> words what makes you guilty of Count 1?
>
> THE DEFENDANT: I am pleading guilty, Your Honor,
> because I did give him the - the money - the
> transaction of the money, and I did fund two derbies.

THE COURT: Okay.  When you say you did give him the
money, who did you give the money to?

THE DEFENDANT: Earl.

THE COURT: Earl who?

THE DEFENDANT: Koanui.

THE COURT: And he was the police detective?

THE DEFENDANT: Yes, he was.

. . . .

THE COURT: Okay.  Thank you.  Now, as to Count 2, how
much money was in the envelope that you gave to
Detective Kahanui?

THE DEFENDANT: I said 5,400 he's saying 5,100.  So he
got the badge so I going with 51.

THE COURT: Okay, and where did that money come from?

THE DEFENDANT: From the [cock]fight.

(Gov. Opp., Exh. 3 at 23-24 and 27, Plea Colloquy in <u>U.S.A. v.</u>

<u>Kupau</u>, Cr. No. 02-00223, Doc. 56-4.)  In the Memorandum Of Plea

Agreement in Kupau's criminal case, Kupau admitted to "making a

payment of $5,100 on March 31, 1998, to the Honolulu Police

Department officer . . . for "police" protection for the illegal

gambling business."  (Gov. Opp., Exh. 2 at 5, Doc. 56-3.)

The language of Kupau's admission and of the Plea Agreement

describes an act of bribery.  As the First Circuit Court of

Appeals noted in <u>Roofers</u> when comparing various federal and state

bribery statutes, different language is frequently used to

describe the same forbidden conduct.  A similar comparison of

language is instructive here.  Pursuant to the federal bribery statute, 18 U.S.C. § 201, a person shall be fined or imprisoned if they "corruptly give[] . . . anything of value to any public official . . . to induce such public official . . . to do or omit to do any act in violation of the lawful duty of such official . . . ."  Id.  Hawaii Revised Statute § 710-1040 defines bribery in similar language, stating that "[a] person commits the offense of bribery if . . . [t]he person confers . . . any pecuniary benefit upon a public servant with the intent to influence the public servant's . . . action in the public servant's official capacity."  Kupau's payment to a police officer, made to protect his illegal business, falls within both descriptions of bribery.

The federal money laundering statute substantially covers the listed conduct of bribery because Kupau's act of bribery establishes the critical element of the intention to promote unlawful activity.  Roofers, 823 F.2d at 655.  Petitioner Kupau's conviction is within the meaning of § 504 bribery, invoking the employment disqualification of § 504.

## III. § 504 DOES NOT VIOLATE FIFTH AMENDMENT DUE PROCESS

The Fifth Amendment due process clause of the United States Constitution incorporates the principles of equal justice under the law, applicable to the federal government, and prohibits the Federal Government from engaging in discrimination that is "so unjustifiable as to be violative of due process."  Bolling v.

Sharpe, 347 U.S. 497, 499 (1954); Lyng v. Castillo, 477 U.S. 635, 636 n. 2 (1986) ("The federal sovereign . . . must govern impartially.  The concept of equal justice under the law is served by the Fifth Amendment's guarantee of due process . . .").

Petitioner Kupau claims his right to due process of law afforded him by the Fifth Amendment of the United States Constitution was violated by his disqualification from employment as the business manager for Local 368.  Kupau asserts § 504 deprives him of the right to due process of law in three ways: 1) by restricting his freedom of employment; 2) by imposing criminal penalties without due process if he violates those restrictions; and 3) by disqualifying him from employment without first having to obtain a separate conviction for bribery.  (Motion at 6, Doc. 51-2.)

A.   **The Restriction Of Employment**

A right to employment in a particular job is not fundamental.  Massachusetts Board of Retirement v. Murgia, 427 U.S. 307, 313 (1976), see also, Commonwealth v. Henry's Dry Wall Co., Inc., 320 N.E.2d 911, 914 ("[N]either the United States Supreme Court nor this court has ever held that the right to work or to pursue one's business is a fundamental right infringement of which deserves strict judicial scrutiny.").  A challenge to a statute affecting a non-fundamental right is reviewed under the rational basis standard.  The holding of a union office is not a

fundamental right justifying the application of a stricter test.

Applying the rational basis standard, "we presume legislation is valid and will sustain it if the classification drawn by the statute is rationally related to a legitimate [governmental] interest." City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 440 (1985)), cert. denied, 519 U.S. 1149 (1997).

Title 29 U.S.C. § 504 differentiates between individuals convicted of specified felonies and those who have not been convicted.  The differentiation is permissible because "[A] classification based on criminal record is not a suspect classification." Upshaw v. McNamara, 435 F.2d 1188, 1190 (1st Cir. 1970).  The differential treatment under 29 U.S.C. § 504 must be upheld if the classification rests "upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." F. S. Royster-Guano v. Virginia, 253 U.S. 412, 415 (1920).

The primary purpose of the Act was to correct the abuses of union officials, and the exploitation of the union members the officials serve, by barring the employment of criminals convicted of specified crimes for a period of time. See H. R. Report No. 741, 86th Cong., 1st Sess., 1959 U.S. Code Cong. and Admin. News at 2424, 2431; see also 29 U.S.C. § 401.

Treating individuals convicted of particular crimes differently than individuals without such records is a reasonable method for achieving the legitimate governmental aim of purging the leadership of labor unions of criminal elements.  It is not arbitrary or unreasonable for Congress to require those so convicted to demonstrate their rehabilitation over a thirteen year period.

In upholding a more restrictive New York employment disqualification statute, the United States Supreme Court in the case of De Veau v. Braisted, cited 29 U.S.C. § 504 with approval and stated that "[b]arring convicted felons from certain employments is a familiar legislative device to insure against corruption in specified, vital areas."  De Veau v. Braisted, 363 U.S. 144, 158-159 (1960).  See also Local 186, International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America v. Brock, 812 F.2d 1235, 1238 n. 4 (9th Cir. 1987) (§ 504 disqualification from union employment "of one who has been convicted of such crimes seems to fit a legitimate legislative goal, curbing corruption in labor affairs.").  The distinction drawn between those convicted of specified crimes and other individuals is rationally related to the legitimate government interest in ensuring corruption free labor unions.

**B.    The Standards Of 29 U.S.C. § 504 Do Not Violate The Due Process Clause**

The second contention, that the employment disqualification

was imposed for "unconvicted conduct," bribery, without the provision of a hearing; is a challenge to the § 504 standard. (Motion at 7, Doc. 51-2.)   The argument is that where there is a conviction for an offense that is not specifically enumerated in § 504, there can be no determination that a person meets the legislatively established disqualification standards without first affording him a hearing.

In Goldberg v. Kelly, 397 U.S. 254 (1970), the United States Supreme Court recognized that "where important decisions turn on question of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." Id. at 269.   Kupau's conviction for money laundering is a matter of public record. There is no question of fact in the matter.   It is undisputed that the conviction was based on Kupau's act of bribing an undercover police officer.   A hearing with the presentation of witnesses in an adversarial setting is not required where there is no question of fact.   The case concerns only the legal issue of whether Kupau's conviction for money laundering constitutes § 504 bribery.   Here, Kupau's conviction is equivalent to the enumerated offense of bribery within the meaning of § 504.   The disqualification provisions of § 504 apply to Petitioner Kupau as a matter of law.

C.    **Title 29 U.S.C. § 504 Is A Remedial Statute**

To determine if a statute such as § 504 functions as an

impermissible *ex post facto* law, substituting a legislative for a judicial determination of guilt, a federal court must examine the purpose of the law.   In De Veau v. Braisted, the United States Supreme Court upheld the constitutionality of an employment disqualification state statute more restrictive than § 504.   The Supreme Court explained that the difference between a remedial and an *ex post facto* law lies in the legislative aim of the statute:

> The mark of an *ex post facto* law is the imposition of what can fairly be designated punishment for past acts. The question in each case where unpleasant consequences are brought to bear upon an individual for prior conduct, is whether the legislative aim was to punish that individual for past activity, or whether the restriction of the individual comes about as a relevant incident to a regulation of a present situation, such as the proper qualifications for a profession.

De Veau v. Braisted, 363 U.S. 144, 160 (1960).   Similarly, in Fleming v. Nestor, the United States Supreme Court held that:

> [w]here the source of legislative concern can be thought to be the activity or status from which the individual is barred, the disqualification is not punishment even though it may bear harshly upon one affected.

Fleming v. Nestor, 363 U.S. 603, 614 (1960).

In the case of Postma, the district court for the Northern District of New York also considered whether § 504 functioned as an *ex post facto* law.   The district court found that § 504 "is principally remedial in its nature and must be applied in a manner to effectuate its purpose . . . ."   Postma v.

25

International Brotherhood Of Teamsters, chauffeurs, Warehousemen, And Helpers Of America, Local 294, 229 F.Supp. 655, 658 (N.D. N.Y. 1964).  In Postma v. Inter. Bro. of Teamsters, 337 F.2d 609, 611 (2d Cir. 1964), the Second Circuit Court of Appeals upheld the district court's decision, applying the United States Supreme Court's rationale in De Veau.

The Act's congressional history confirms that the disability provision of § 504(a) is not an *ex post facto* imposition of punishment.  The Congressional record reflects in the discussion about passage of the disability provision that the purpose of § 504(a) is to protect union members and the public interest from the corruption of union officials who are convicted criminals. See 129 Cong. Rec. 16367-70, Statement of Senator Hatch (purpose of the new provision was not to inflict new punishment but rather to bring relief to the union membership from harm caused by convicted officials); 129 Cong. Rec. 16372, Statement of Senator Nunn (Act does not impose punishment for past criminal conduct and, based on De Veau and Postma, is on "firm and constitutional ground").

Kupau's third violation of due process claim that § 504 operates, in effect, as a sentencing penalty is without merit. (Motion at 7, Doc. 51-2.)  Section 504 exists to prevent corruption in labor unions.  De Veau, 363 U.S. at 160.  The employment disqualification imposed on Kupau is not penal in

nature.

**IV.   § 504 IS NOT VOID FOR VAGUENESS**

A statute is not unconstitutionally vague if its provisions
are "set out in terms that the ordinary person exercising
ordinary common sense can sufficiently understand and comply
with, without sacrifice to the public interest." Broadrick v.
Oklahoma, 413 U.S. 601, 608 (1973).  The constitutionality of a
statute is also determined by whether the statute's provisions
include a clear scienter requirement, pursuant to which errors
made in good faith are not penalized.  See Colautti v. Franklin,
439 U.S. 379, 395 (1979) ("This Court has long recognized that
the constitutionality of a vague statutory standard is closely
related to whether that standard incorporates a requirement of
*mens rea*.")

Kupau argues that § 504 is unconstitutionally vague in that
a disqualification based on Kupau's conviction of money
laundering is inconsistent with the statute's plain language
which does not list money laundering.  (Motion at 7, Doc. 51-2.)

The Act, however, clearly sets out in plain language that
conviction of an offense whose elements include an enumerated
crime will trigger the proscriptions of § 504.  The provision is
"set out in terms that the ordinary person exercising ordinary
common sense can sufficiently understand and comply with, without
sacrifice to the public interest." Broadrick, 413 U.S. at 608.

27

Here, Kupau was convicted of money laundering because he
bribed a police officer to protect his illegal gambling business.
The act of paying the police officer to provide police protection
for illegal activity with the proceeds of illegal gambling falls
squarely within the ordinary meaning of bribery, an enumerated §
504 crime.

Kupau also argues that § 504 is penal in that a person of
common intelligence would fail to understand that money
laundering could render an individual subject to criminal
prosecution for holding union office.  The argument is without
merit.  The Act is remedial in nature, and "it must be construed
and applied having in mind its purpose to check the unlawful
action of labor organization officials who must establish their
trustworthiness" by a thirteen year ban on employment by a labor
union.  Postma, 229 F.Supp. at 658; see also De Veau, 363 U.S. at
160.

Further, the sanction provision of § 504 incorporates a
requirement of *mens rea*, providing protection against prosecution
for any violation made with an innocent mind.  Colautti, 439 U.S.
at 395.  Section 504 provides in section (b) that "[a]ny person
who willfully violates this section shall be fined not more than
$10,000 or imprisoned for not more than five years, or both."  29
U.S.C. §504(b).  Section 504 is not unconstitutionally vague.

## CONCLUSION

For the foregoing reasons, the Court DENIES Petitioner Kupau's Motion For Partial Summary Judgment As To Applicability Of 29 U.S.C. § 504, (Doc. 51).

IT IS SO ORDERED.

DATED: February 4, 2009, Honolulu, Hawaii.



_/s/ Helen Gillmor_____

Chief United States District Judge

OLIVER H. KUPAU v. UNITED STATES DEPARTMENT OF LABOR,
Civ. No. 08-00296 HG-LEK; ORDER DENYING PETITIONER'S MOTION FOR
PARTIAL SUMMARY JUDGEMENT AS TO APPLICABILITY OF 29 U.S.C. § 504